UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT HEY,

    Defendant.
                                  /

Case No. 03-80863

Honorable Nancy G. Edmunds

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT ROBERT HEY'S MOTION TO SET ASIDE CONVICTION, PURSUANT TO FED. R. CRIM. P. 29, AND FOR NEW TRIAL AND REQUEST FOR EVIDENTIARY HEARING, PURSUANT TO RULE 33 [125]**

Defendant Hey was originally charged in Four Counts of a Second Superseding Indictment: Count Two - charging him with conspiring to obstruct justice in violation of 18 U.S.C. §§ 371 and 1512(b)(3); Count Seven - charging him with obstruction of justice in violation of 18 U.S.C. § 1503; Count Eight - charging him with perjury before the Grand Jury in violation of 18 U.S.C. § 1623; and Count Nine - charging him with obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). The government dismissed Count Seven as duplicitous before the case went to the jury, and the jury found Defendant not guilty of the conspiracy charged in Count Two.

On June 25, 2004, Defendant Hey was convicted by a jury of Count Eight, perjury before the Grand Jury, and Count Nine, obstruction of justice. The charges arose out of the July 27, 2002 arrest of Robert Paxton, which initiated from a road rage incident on Gratiot Avenue in Mt. Clemens involving Defendant, a Mt. Clemens police officer, while he

was off duty. Defendant Hey was also present at the scene where Paxton was arrested, but never left his car.

Defendant now moves for judgment of acquittal, pursuant to Fed. R. Crim. P. 29(c), arguing that there was insufficient evidence showing that he was in a position to observe events as they unfolded during Paxton's arrest and thus insufficient evidence to support his convictions of perjury and obstruction of justice. Defendant also moves, pursuant to Fed. R. Crim. P. 33, for a new trial or, in the alternative, for a post-trial evidentiary hearing, arguing that the government suppressed material information essential for a fair trial. For the reasons stated below, Defendant Robert Jacquemain's motion is DENIED.[1]

**I.   Facts**

The charges against Defendant Hey arose out of the July 27, 2002 arrest of Robert Paxton by Mt. Clemens Police Officers. Paxton's arrest was initiated by a road rage incident on Gratiot Avenue in Mt. Clemens involving Defendant Hey, a Mt. Clemens Police Officer, while he was off-duty.

At trial, there was evidence that Paxton was pulled from his pick-up truck, thrown to the ground, and restrained by five or six uniformed Mt. Clemens police officers. (Brian Pike, 6/18/04 Tr. at 83-85; Foltz, 6/17/04 Tr. at 145.) Various witnesses testified of seeing arms moving up and down in a punching motion, and of seeing a body assuming a protective fetal-position like posture, to ward off blows to the body. There was testimony from civilian witnesses, Brian Pike (passenger in off-duty Defendant Officer Hey's car),

---

[1]Defendant Carson has filed a motion joining the Rule 33 new trial portion of Defendant Hey's motion. Defendants Robert and Peter Jacquemain also filed joinder motions.

Duane Poucher and Robert Paxton that an officer or officers struck repeated blows to Paxton's head.  Duane Poucher, one of the Mt. Clemens police officers involved in the arrest, testified that he repeatedly kicked Paxton, that at no point was Paxton the aggressor, and that Paxton in no way posed any threat to the officers.  (Poucher, 6/10/04 Tr. at 82-83.)   Civilian witnesses corroborated this testimony.  The jury, rejecting an argument that the Defendant Officers reasonably perceived a significant threat of violence from Paxton, found Defendant Officer Carson guilty of a federal crime; i.e., using excessive force in the arrest of Robert Paxton.

There was also trial testimony that Defendant Hey was at the scene during all relevant time periods and stayed at the scene until Paxton was removed in handcuffs.  Brian Pike, the passenger in Defendant's car, testified that they followed Paxton's truck from Gratiot, and were close enough to see Paxton's and Mt. Clemens police officers' vehicles zig-zag through the neighborhood until they came to a stop.  Pike also testified that he and Defendant were close enough to hear a short siren burst, and then all vehicles came to a stop.  (6/18/04 Tr. at 70-74.)  According to Pike, the scene was well-lit, and there was an unobstructed view from Defendant Hey's car. (*Id.* at 75.)  He further testified that he saw the Mt. Clemens Police Officers standing by the door of Paxton's pick-up truck, reach into the vehicle and pull Paxton out, head first. (*Id.* at 79.)  Pike testified that he never saw Paxton on his feet, but instead he was taken straight to the ground.  Pike then saw the officers surround Paxton and testified that there were so many officers surrounding Paxton that he could not see Paxton at all.  Pike could see, however, that the officers were striking blows, with their arms going up and down in a punching and grabbing motion.  Pike testified that this scene went on for around a minute or slightly less. (*Id.* at 87.)

When Pike was asked whether he saw any other officers standing back from the scene, he answered: "No, . . . I was focused on what was going on." (*Id.* at 89.)  At trial, there was testimony from Mt. Clemens Police Officer Duane Poucher, Paxton, and the civilian witnesses that the Police Officers were repeatedly hitting Paxton who was prone and restrained on the ground.  Pike testified that he was focused on what was going on and commented to Defendant Hey about these events.  (*Id.*)  Pike testified that Defendant Hey told him to stay in the car so as not to add to the confusion.  (*Id.* at 89-90.)

Pike testified that he was close enough to see Paxton's arm position (behind him as if handcuffed) when he was eventually up on his feet, and could see that Paxton was shoved up against the side of the police car and then into the back seat of the police car. (*Id.* at 92, 96-97.)  This testimony was corroborated by another witness, Robert Jones, who could see the same thing from another direction and from further away.

In stark contrast to Mr. Pike's detailed testimony of Paxton's arrest, Defendant Hey consistently testified that he had no knowledge of anything that happened until after the incident was over and Paxton had been removed from the scene.  At trial, evidence was introduced showing that in his testimony at Paxton's Preliminary Examination, Defendant testified, "I couldn't see anything."  (Govt. Ex. 33.)

Defendant Hey later testified before a federal Grand Jury which was investigating Paxton's arrest and which ultimately indicted Defendant.  In his second appearance before the Grand Jury (a continuation of his first appearance a month earlier), Defendant was asked a series of questions about what he saw at the traffic stop involving Paxton. Defendant denied seeing Paxton out of his car, denied seeing how Paxton came to be out of his car, and denied seeing any of the Officers involved in Paxton's arrest until after the

4

incident was over.  In response to the question, "When you first arrived, did you see any of the officers on the scene?", Defendant responded, "No, not when I first arrived.  I couldn't see where they were at.  I was behind the patrol car, I don't recall seeing any officers until Officer Jacquemain came back [after the incident was over]."  (Govt. Ex. 40.)  Defendant acknowledged that Mr. Pike did see Paxton's arrest as it unfolded and even alerted Defendant to the fact that something startling and attention-getting was happening a short distance away.  Defendant testified, however, that he saw absolutely nothing and no one until the incident was over.

When pressed further on the subject, Defendant persisted that he saw nothing and knew nothing.  He was asked, "Is it fair to say from the moment that you arrived on the scene until the moment that Peter Jacquemain walked back to your car, you did not see any person on the scene?"  Ultimately, he answered, "No, I did not."  Defendant was later asked another series of questions from Grand Jurors, and again Defendant insisted that he saw nothing, and had no information as to anything that happened on the scene.  Defendant was asked, "Just to summarize, you were out on the night in question, you were there, you saw nothing, you heard nothing, you know nothing.  Is that accurate?"  Defendant responded that he had no information regarding the events surrounding Paxton's arrest other than the road rage incident that led up to that arrest.  (*Id.*)  The Grand Jury asked Defendant whether he was being forced to testify falsely, whether he was afraid to tell the truth, and whether he was protecting someone.  (*Id.;* 6/21/04 Tr. at 25.)  Defendant denied this.

Defendant was convicted of both perjury before the Grand Jury and obstruction of justice.  This matter is presently before the Court on his motion to have his conviction set

aside, pursuant to Rule 29(c), and/or for a new trial and evidentiary hearing, pursuant to Rule 33.

## II. Analysis

### A. Rule 29 Motion - Sufficiency of the Evidence

"In deciding whether the evidence is sufficient to withstand a motion for an acquittal, and support a conviction, the court views all evidence in the light most favorable to the prosecution and determines whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). The court does not independently weigh the evidence or assess the credibility of trial witnesses. *Id.* It must, however "consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Fusero*, 106 F. Supp.2d 921, 926-27 (E.D. Mich. 2000) (internal quotation marks and citation omitted).

To prevail on his Rule 29 motion, Defendant must show that, even when "viewing the evidence in a light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Talley*, 164 F.3d at 996 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Defendant has not satisfied this burden and thus his motion is denied.

Defendant argues that, although circumstantial evidence can arguably support an inference that Defendant was in a position to see because the passenger in his car -- Brian Pike -- saw what happened, this is insufficient to support his perjury and obstruction of justice convictions. (Def.'s Br. at 5, ¶ 17.) This Court disagrees.

**1. Defendant's Conviction for Perjury**

To sustain a conviction for perjury in violation of 18 U.S.C. § 1623, the government must prove that Defendant: (1) knowingly made, (2) a materially false declaration, (3) under oath, (4) in a proceeding before or ancillary to any court of the United States. *United States v. Lee*, 359 F.3d 412, 416 (6th Cir. 2004). The parties stipulated that a Grand Jury was investigating the events surrounding Paxton's arrest, as well as whether any persons obstructed or endeavored to obstruct that investigation, and Defendant provided sworn testimony before this federal Grand Jury. (Govt. Ex. 54.) Thus, the only disputed elements at trial were whether the statements at issue were false and whether they were material. "A statement is material if it has the natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed." *Lee*, 359 F.3d at 416 (internal quotes and citation omitted).

At trial, the evidence was that Defendant was present at the scene the entire time of Paxton's arrest. Numerous witnesses, viewing the events from various points, testified that they observed at least some portion of the incident and were able to describe what they saw; i.e., Robert Jones (view from north), Joseph Burkhardt (view from northwest), Tracy Anderson (view from west), Brian Pike (view from south while sitting inside Defendant Hey's car), Duane Poucher (view from south), Heather Lane (view from east). When viewed in the light most favorable to the government, this evidence is sufficient for a rational jury to conclude that Defendant Hey could overcome the darkness, the flashing lights, and other distractions and obstructions to see at least some portion of the events.

Viewing Brian Pike's testimony in the light most favorable to the government, it is difficult to reconcile it with Defendant Hey's Grand Jury testimony. Mr. Pike, who was

7

sitting in Defendant Hey's car just 18 inches to his right, testified that he was able to see the entire incident, was able to describe what he saw in great detail, and alerted Defendant Hey as to what he was observing -- a fight between Defendant Hey's fellow officers and the man involved in a road rage incident with Defendant Hey.  This evidence is sufficient for a rational jury to conclude that Defendant Hey saw at least some portion of Paxton's arrest despite his Grand Jury testimony to the contrary.

Defendant Hey's false statements were material because, if Defendant had been truthful like Mr. Pike, the investigation *could* have been furthered.  This is true both with respect to the investigation whether excessive force was used in connection with Paxton's arrest and whether there was a concerted effort to cover-up any such use of excessive force.  Several of the police reports written by the Mt. Clemens Police Officers involved in Paxton's arrest were directly contradicted by Mr. Pike's testimony.  Had Mr. Pike's testimony been corroborated by an interested police officer like Defendant Hey, that would have substantially assisted the government at the time the statements were made. "[M]ateriality is tested *at the time the allegedly false statement was made.*"  *Lee*, 359 F.3d at 417.  To establish materiality, it is not "required that the government prove that the perjured testimony actually influenced the relevant decision-making body."  *Id.*  All that is required is that the testimony "has the natural tendency to influence, or was capable of influencing. . . ."  *Id.*

Defendant attempts to show the lack of materiality by mischaracterizing the government's theory of the case.  Contrary to Defendant's argument here, the Grand Jury was interested in more than an identification of the officers present at Paxton's arrest. Defendant even stipulated that the Grand Jury was investigating "the events surrounding

the July 27, 2002, arrest of Robert Paxton." The Grand Jury was investigating what transpired during Paxton's arrest. Accordingly, Defendant Hey's testimony, if truthful, could have furthered that investigation.

### 2. Defendant's Conviction for Obstruction of Justice

To sustain a conviction for obstruction justice in violation of 18 U.S.C. § 1512(c)(2), the government must prove that Defendant corruptly obstructed, influenced or impeded an official proceeding, or attempted to do so. Defendant has stipulated that he provided testimony to a Grand Jury that was investigating the events surrounding the arrest of Robert Paxton and also whether there was any effort to obstruct that investigation.

Viewing the trial evidence in the light most favorable to the government, the Court concludes that there was sufficient evidence to support Defendant's conviction for obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). Defendant claimed to have seen nothing at all despite Mr. Pike's detailed testimony about what he saw from his vantage point 18 inches to Defendant's right and despite Mr. Pike's testimony that he alerted Defendant to the events he was witnessing as they were occurring. Defendant, in his brief, concedes as much when he asserts that "circumstantial evidence can arguably support an inference that [Defendant] Hey was in a position to see because Brian Pike was also in the car and saw what happened. . . ." (Def.'s Br. at 5, ¶ 17.)

### B. Rule 33 Motion - New Trial or Evidentiary Hearing

Federal Rule of Criminal Procedure 33 permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 further provides that new trial motions "grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(a)(1). "Unless

9

a motion for a new trial is based on newly discovered evidence, it must be filed within seven days of the verdict or within such further time as the court may fix during that seven-day period." *United States v. Koehler*, 24 F.3d 867, 869 (6th Cir. 1994) (citing Fed. R. Crim P. 33(b)). "If the motion is untimely, the court lacks jurisdiction to consider it on the merits." *Id.* Here, the Court granted Defendant's request for more time to file his post-trial motions and thus it has jurisdiction to consider a Rule 33 motion on the merits.

The decision whether to grant a Rule 33 motion for a new trial lies within the Court's sound discretion. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). "The defendant bears the burden of proving that a new trial should be granted." *Id.*

Defendant's new trial argument contends that, subsequent to Defendant's conviction, his counsel was provided with information from the Probation Department that contradicts Paxton's trial testimony regarding his knowledge about the nature and extent of his injuries and his alleged damages. Defendant further contends that this "newly discovered evidence" would be considered discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963), because it would allow Defendant to develop a record regarding Paxton's alleged concealment of a material fact; i.e., that weeks before trial Paxton had detailed and itemized his injuries, costs and damages in a signed document requesting restitution.

As observed by the Sixth Circuit, "[m]otions for a new trial based on newly discovered evidence should be granted with caution." *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991) (citing C. Wright, *Federal Practice and Procedure* § 557 at 315 (1982)). The burden is on the Defendant to show that a new trial should be granted by establishing: "(1) the new evidence was discovered after trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely

cumulative or impeaching; and (4) the evidence would likely produce acquittal." *Id.*

The government argues that Defendant cannot satisfy his burden and thus is not entitled to a new trial under Rule 33. This Court agrees.

First, Defendant fails to identify the allegedly false testimony provided by Paxton. Accordingly, without such testimony, Defendant cannot establish how the information in the restitution request proves any of Paxton's testimony was false.

Moreover, to establish a *Brady* claim, Defendant would also have to establish that the "new evidence" was uniquely in the government's possession, that it was suppressed and thus unavailable to Defendant, and that the suppressed information was material; i.e., it calls into question the fairness of the jury's verdict. *See United States v. Sherlin*, 67 F.3d 1206, 1217-18 (6th Cir. 1995). As the *Sherlin* court observed, "[i]n *Brady*, the Court held that 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment.'" *Sherlin*, 67 F.3d. at 1218 (quoting *Brady*, 373 U.S. at 87). Defendant has not made the requisite showing.

The restitution request was never uniquely in the government's possession as required under *Brady*. This request is similar to the presentence report in *Sherlin* which the court held was a report prepared for the court for its use in sentencing and thus was not material evidence withheld from the defense by the prosecution. *Id.* at 1218. As the government persuasively argues, the Probation Department is an arm of the court, not the executive branch, and thus the government cannot be solely responsible for material solely in its custody. Because the restitution request was no more available to the government than Defendant, it cannot be said the government suppressed the information in that

11

request. Accordingly, there can be no *Brady* violation.

Furthermore, Defendant cannot establish materiality. Paxton's credibility was not material to the charges on which the jury found Defendant guilty beyond a reasonable doubt. Rather, it was trial testimony from Brian Pike, Duane Poucher, and the civilian witnesses that contradicted Defendant's testimony that he saw nothing during Paxton's arrest. Defendant has not and cannot show that any additional impeachment evidence likely would have produced an acquittal. Accordingly, Defendant's motion for a new trial or an evidentiary hearing is denied.

### III. Conclusion

For the foregoing reasons, Defendant Hey's motion is DENIED.


                                           s/NANCY G. EDMUNDS
                                           Nancy G. Edmunds
                                           U.S. District Judge

Dated: April 29, 2005